1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ILLINOIS-MASONIC MEDICAL CENTER,

*Plaintiff*

v.

KATHLEEN SEBELIUS, Secretary United States
Department of Health and Human Services.

*Defendant.*

No.  11-cv-00105 (BJR)

ORDER AND MEMORANDUM
OPINION ON CROSS MOTIONS
FOR SUMMARY JUDGMENT

## I.    INTRODUCTION

Before the court is plaintiff's Motion for Summary Judgment (Dkt. No. 12) and defendant's Cross Motion for Summary Judgment (Dkt. No. 13). Upon consideration of the summary judgment motions, the memoranda in support thereof, the entire record, and the applicable law, the Court will DENY plaintiff's motion for summary judgment and GRANT defendant's Motion for Summary Judgment. The court's reasoning is set forth below.

## II.    BACKGROUND

In this action, plaintiff, Illinois-Masonic Medical Center ("plaintiff" or the "provider"), seeks review of a final decision by the Secretary of Health and Human Services (the

ORDER-1

1
2
3
"Secretary"), affirming the Provider Reimbursement Review Board's ("PRRB" or the "Board")
determination that it lacked jurisdiction over Medicaid eligible days that were not specifically
considered within the implementation of a revised Notice of Program Reimbursement.

### A.   Statutory and Regulatory Background

4
5
6
7
8
9
10
11
12
This action arises under Title XVIII of the Social Security Act, also known as the
Medicare statute. *See* 42 U.S.C. §§ 1395–1395ggg. Relevant to this case is Part A of the
Medicare statute, which authorizes payment to hospitals. Part A services are furnished by
providers that have entered into a "provider agreement" with the Secretary. *Id*. §§ 1395x(u),
1395cc. The Secretary is responsible for determining reimbursement amounts and for issuing
regulations defining reimbursable costs. *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 506–
07 (1994) (citing 42 U.S.C. § 1395x(v)(1)(A)).

13
14
15
16
17
18
19
20
21
22
Most hospitals, including plaintiff, are reimbursed for their operating costs of furnishing
inpatient hospital services to Medicare beneficiaries through the Prospective Payment System
(the "PPS"). In general, a hospital's PPS payment is based on prospectively determined national
rates for each discharge, rather than on the actual operating costs incurred by the hospital. *Id*. at §
1395ww(d)(1)-(4). The PPS also contains a number of provisions that adjust payments on the
basis of hospital-specific factors. *See, e.g,. id*. § 1395ww(d)(5). Relevant to the present case, the
Medicare disproportionate share hospital adjustment ("DSH Adjustment") provides increased
PPS payments to hospitals that serve a "significantly disproportionate number of low-income
patients." *Id*. at § 1395ww(d)(5)(F)(i)(I).

23
24
25
Whether a hospital qualifies for the DSH Adjustment, and how large an adjustment it
receives if it does qualify, depends primarily on the hospital's "disproportionate patient
percentage." *Id*. at § 1395ww(d)(5)(F)(v). In turn, the disproportionate patient percentage is the

ORDER-2

sum of two fractions, the "Medicare and Medicaid fractions." The Medicaid fraction, which is relevant to the underlying issues here, uses Medicaid eligibility as a proxy for low income; generally speaking, it is based upon the number of patient days attributable to individuals who were "eligible for" Medicaid but not entitled to Medicare Part A benefits. *Id*. at § 1395ww(d)(5)(F)(vi)(II). The numerator of the Medicaid fraction is frequently referred to as "Medicaid eligible days."

Hospitals eligible for Part A payments submit annual cost reports containing reimbursement claims to a designated fiscal intermediary ("FI"), who processes claims on behalf of the Secretary. On the basis of a hospital's cost report, the FI makes a final determination known as a Notice of Program Reimbursement ("NPR") regarding the amount the hospital should be reimbursed for services rendered during the reporting period. 42 C.F.R. § 405.1803. If a provider is dissatisfied with the FI's determination, it may request a hearing before the PRRB. 42 U.S.C. § 1395oo(a). In order to qualify for PRRB review, the provider must be dissatisfied with the FI's determination, request a hearing within 180 days of the determination, and the amount in controversy must be at least $10,000. *Id*. If the PRRB holds a hearing, its decision is subject to review by the Secretary's delegate, the Administrator of the Centers for Medicare and Medicaid Services (the "Administrator" or "CMS"). 42 U.S.C. § 1395oo(f)(1).

The Secretary has promulgated regulations that govern administrative finality and reopening of NPRs. *See* 42 C.F.R. §§ 405.1807, 1885, 1887. The FI may reopen specific "findings on matters at issue" within three years of the NPR. *Id*. at § 1885. When the reopening results in a revision to the determination, the FI notifies the parties and explains the basis for the revisions. *Id*. at § 1887. A hospital may appeal the revised NPR pursuant to section 405.1889, which, at the time of this appeal, stated:

> [w]here a revision is made in a determination or decision on the amount of program reimbursement after such determination or decision has been reopened as provided by § 405.1885, such revision shall be considered a separate and distinct determination or decision to which the provisions of §§ 405.1811 [right to intermediary hearing], 405.1835 [right to Board hearing], 405.1875 [CMS Administrator's Review] and 405.1877 [judicial review] are applicable.

42 C.F.R. § 1889 (2007).

## B.   Factual and Procedural Background

On September 27, 2000, plaintiff's FI issued a NPR for fiscal year end ("FYE") 1997. (*See* Dkt. No. 10, Administrative Record, ("AR") at 116.). On March 24, 2001, plaintiff appealed to the PRRB regarding the number of Medicaid eligible days included in its FYE 1997 DSH Adjustment. (*Id*. at 128-129.). Plaintiff raised the following issue in its appeal:

> [T]he provider disagrees with the calculation of the second computation of the disproportionate patient percentage set forth at 42 C.F.R. 412.106(b)(4) [governing calculation of the Medicaid fraction] of the Secretary's regulations. The [FI], contrary to regulation, failed to include as Medicaid-eligible days services to patients eligible for Medicaid as well as patients eligible for general assistance.[1]

*Id*.  Thereafter, at plaintiff's request, the matter was transferred to the Medicaid Eligible Days Group Appeal, PRRB Case 98-2694G. *Id*.

On October 10, 2007, the FI and a number of providers involved in the Medicaid Eligible Days Group Appeal, including plaintiff, entered into a Full Administrative Resolution. (AR at 82-83.).The parties entered into the Resolution "for the purpose of setting forth the basis for resolving the issues that are pending before the [PRRB]." (*Id*. at 82.). With respect to plaintiff's Medicaid eligible days, "the parties agreed to resolve the case as follows…":

---

[1]    "General assistance" days are patient days attributable to patients who are not Medicaid eligible but who receive benefits under state general assistance programs. The Secretary argues that plaintiff's appeal raised two distinct issues because "whether Medicaid eligible days should be included in the Medicaid fraction is a separate issue from whether general assistance days should be included." (Dkt. No. 13 at 7.). It is not necessary for this court to address this issue because plaintiff later abandoned the "general assistance" claim. (*See* AR 37 n. 7.).

ORDER-4

(c) 14-0132, FY June 30, 1997 – No later than October 31, 2007, QRS, the Provider's Representative [,] will provide documentation to support the days [that provider] claim[s] are not exempt unit days. If documentation is not provided, provider withdraws the appeal with no further action. If documentation is provided, the FI will complete the review and issue their [sic] findings by November 30, 1997. A Revised NPR will be issue [sic] by December 31, 2007, if appropriate.

(*Id*. at 82, 83.).

The parties also agreed that:

The provider's signature serves as the provider's request to withdraw this case from appeal. . . . The provider reserves its right to reinstate the appeal, consistent with the PRRB rules regarding reinstatement and withdrawal of appeals, should the intermediaries not meet the dates specified above.

(*Id*. at 83.). Pursuant to the terms of the Resolution, plaintiff submitted documentation regarding 230 Medicaid eligible days that it sought to include in the DSH Adjustment calculation. (*Id*. at 80.).

By letter dated November 21, 2007, the FI notified plaintiff that it was reopening the provider's cost report "[t]o incorporate the administrative resolution of [the Medicaid Eligible Days Group Appeal]." (*Id*. at 119.). On December 3, 2007, the FI issued a revised NPR, reflecting an additional 24 Medicaid eligible days. (*Id*. at 80, 116-118.). The FI disallowed the remaining 206 days for a variety of reasons, including claiming that some of the days had been submitted on prior cost reports. (*Id*. at 80.). On December 6, 2007, the PRRB dismissed plaintiff from the Group Appeal "per prior Administrative Resolution." (*Id*. at 98-100.). To date, plaintiff has not sought to reinstate the appeal. (AR at 9.).[2]

---

[2]    Plaintiff initially argued that the "only contingency for withdrawal of the Hospital's appeal…was in the event it did not submit the documentation by the stated deadline." (Dkt. No. 12 at 26.). Plaintiff has since conceded that its signature on the administrative resolution served as its request to withdraw the case from appeal (*See, generally*, Dkt. No. 15.).

ORDER-5

On May 28, 2008, plaintiff appealed the revised NPR. (*Id.* at 147.). Plaintiff did not challenge the FI's disallowance of the 206 days, rather, plaintiff sought to include an additional 2,244 Medicaid eligible days in its 1997 DSH Adjustment calculation. (*See* AR at 149.).[3] Plaintiff claimed that the 2,244 days included Medicaid eligible days for patients with Medicaid coverage and/or infants who were covered by Medicaid through their mothers. (*Id.* at 10.). The additional days also included general assistance days. (*Id.*)

The FI contested the May 28, 2008 appeal, arguing that the Board did not have jurisdiction over the additional days because the days had not been submitted to it for review as part of the Full Administrative Resolution. (AR at 5.). In a decision dated September 17, 2010, the Majority of the Board agreed, finding that it lacked jurisdiction under section 1878 of the Social Security Act.[4]

Thereafter, on October 12, 2010, the Office of the Attorney Advisor of the Administrator of CMS notified the parties that the Administrator would review the September 17, 2010 PRRB decision "on own motion" and on November 18, 2010, the Administrator affirmed the Board's decision. (*Id.* at 5-12, 27-28.). As an initial matter, the Administrator determined that the infant and general assistance days included in the additional 2,244 days were not addressed in the revised NPR, and as such, were outside the "issue specific" limitation on the scope of Board review of a revised NPR. (*Id.* at 10.). Next, the Administrator noted that the right to appeal a revised NPR does not originate from section 1878 of the Social Security Act; rather, the right resides in 42 CFR 405.1835 and 1889. (*Id.*). Taken together, those regulations require that a "[p]rovider be able to demonstrate dissatisfaction…" in order to maintain an appeal, and where a

---

[3]     Plaintiff asserts that was not until January 27, 2009 that it received the information necessary to identify all of the patients it served during 1997 who were Medicaid eligible. (Dkt. No. 12 at 13-14.).

[4]     One Board Member dissented with the Majority's decision. (*Id.* at 36-39.).

provider challenges an agreed upon administrative resolution, the provider cannot, because of the very existence of the agreement, demonstrate "dissatisfaction." (*Id.*) Finally, the Administrator concluded that the "plain language of the [A]dministrative [R]esolution shows that it was intended to resolve for all time all disputes raised in the FY 1997 appeal for [plaintiff]." (*Id.* at 11.).

On January 14, 2011, plaintiff filed the present action. (Dkt. No. 1.). Plaintiff moved for summary judgment on June 23, 2011 (Dkt. No. 12) and the Secretary filed a cross motion for summary judgment on August 8, 2011 (Dkt. No. 13). The case was reassigned to this judge on January 27, 2012. (Dkt. No. 19.). The matter is now ripe for review. [5]

---

[5]    On November 3, 2011, plaintiff moved the court for leave to file a sur-reply. (Dkt. No. 16.). The court denied the motion without prejudice by a minute order issued that same day. Plaintiff moved for reconsideration on March 5, 2012 (Dkt. No. 23); the Secretary opposed the motion (Dkt. No. 24). The court finds that plaintiff has failed to demonstrate "'(1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error in the first order." *Keystone Tobacco Co., Inc. v. US Tobacco Co.*, 217 F.R.D. 235, 237 (D.D.C. 2003). Accordingly, reconsideration of the court's earlier decision is not warranted. The determination of whether to "grant or deny leave to file a sur-reply is entrusted to the sound discretion of the district court." *Akers v. Beal Bank*, 760 F. Supp. 2d 1, 2 (D.D.C. 2011) (quoting *Am. Forest & Paper Ass'n, Inc. v. Envtl. Protection Agency*, 1996 WL 509601 at *3 (D.D.C. Sept. 4 1996)); *see also, Kifafi v. Hilton Hotels Retirement Plan*, 736 F. Supp. 2d 64, 69 (D.D.C. 2010) (noting that sur-replies are generally disfavored). Plaintiff also filed two separate notices of supplemental authority. (*See* Dkt. Nos. 20 and 27.). In the first notice, plaintiff refers the court to *Catholic Health Initiatives v. Sebelius*, 2012 WL 255275 (D.D.C. Jan. 30, 2012). Plaintiff cites this case for the proposition that administrative resolutions are not necessarily "final." *Catholic Health* involved a provider's challenge to a revised NPR. In the "background section" of the case, the court stated that the parties had "reached an 'Administrative Resolution' of the reimbursement dispute...[h]owever...the [FI] based upon...---'a recent clarification received from CMS'---announced that it would once again revised [the reimbursement dispute]." *Id.* at *3. That is the last time the administrative resolution is mentioned in the decision. The parties did not dispute its existence, its scope or the effect on the case. As such, *Catholic Health* has no persuasive value on the issue before this court. In the second notice of supplemental authority, plaintiff cites to a recently published PRRB decision, *Norwalk Hospital v. Blue Cross Blue Shield Association/National Government Services, Inc.*, Dec. No. 2012-D14 (March 19, 2012), a decision that is still subject to CMS review and is, therefore, not a final decision of the Secretary. Accordingly, the decision has no precedential value and will not be reviewed by the court.

III.    DISCUSSION

A.      Standard of Review

Review of the Secretary's decisions is governed by 42 U.S.C. § 1395oo(f)(1), which incorporates the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. Accordingly, a court may set aside a final agency action only when it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A),(E). Under both the "arbitrary and capricious" and "substantial evidence" standards, the scope of review is narrow and a court must not substitute its judgment for that of the agency. *Motor Veh. Mfrs. Ass'n v. State Farm Mutual Ins. Co.*, 463 U.S. 29, 43 (1983); *Gen. Teamster Local Union No. 174 v. Nat'l Labor Relations Bd.*, 723 F.2d 966, 971 (D.C. Cir. 1983). As long as an agency has "examined the relevant data and articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made," a reviewing court will not disturb the agency's action. *MD Pharm., Inc. v. Drug Enforcement Admin.*, 133 F.3d 8, 16 (D.C. Cir. 1998). The burden of showing that an agency's action violates the APA falls on the provider. *Diplomat Lakewood Inc. v. Harris*, 613 F.2d 1009, 1018 (D.C. Cir. 1979).

To the extent that the Secretary's decision is based on the language of the Medicare statute, the court owes *Chevron* deference. *Marymount Hosp., Inc. v. Shalala*, 19 F.3d 658, 661 (D.C. Cir. 1994). The Court must defer to the Secretary's interpretation "whenever it is a permissible construction of the statute." *HCA Health Servs. of Oklahoma v. Shalala*, 27 F.3d 614, 617 (D.C. Cir. 1994). Similarly, the Secretary's interpretation of her own regulations is entitled to substantial deference. *Thomas Jefferson Univ.*, 512 U.S. at 512. The court must give the Secretary's interpretation "controlling weight" unless it is "plainly erroneous or inconsistent with the regulation." *Id.* (citations omitted). "[B]road deference is all the more warranted when,

as here, the regulation concerns 'a complex and highly technical regulatory program,' in which the identification and classification of relevant 'criteria necessarily requires significant expertise and entail the exercise of judgment grounded in policy concerns.'" *Id.* (quoting *Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680, 697 (1991)).

### B.   Analysis

This court must determine whether the Secretary's decision that the PRRB did not have jurisdiction over the 2,244 Medicaid eligible days that were never presented to or considered by the FI, is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. The Secretary, in interpreting her regulations, limits the scope of the PRRB's jurisdiction over appeals of revised NPRs to the "matter at issue" in the revised NPR. Applying this limitation to the present case, the Secretary concluded that the "matter at issue" in plaintiff's revised NPR was the 230 days reviewed by the FI pursuant to the administrative resolution between the parties. Because none of the new 2,244 days were part of the original 230 days, the Secretary determined that the PRRB did not have jurisdiction over the additional days. For the reasons discussed below, this court finds that the Secretary's decision is based on a reasonable interpretation of her regulations, and thus, within the contours of 5 U.S.C. § 706 and the Medicare statute.

### 1.   *The Secretary's interpretation of section 405.1889 is reasonable and entitled to substantial deference.*

The PRRB has jurisdiction to review a provider's challenge to an FI's final reimbursement determination if: (1) the provider is dissatisfied with the FI's final determination; (2) there is a minimum amount in controversy of at least $10,000; and (3) the appeal is filed within 180 days of receipt of the final determination. 42 U.S.C. § 1395oo(a); *HCA Health Servs.*, 27 F.3d at 617. Section 1395oo(a) does not address the Board's jurisdiction over revised NPRs.

ORDER-9

*Id.* at 618-619. Therefore, courts look to the Medicare regulations for guidance. *Id.* at 618; *French Hospital Medical Center v. Shalala*, 89 F.3d 1411, 1417 (9th Cir. 1996). Two regulations, read in tandem, allow a provider to appeal a revised NPR. 42 C.F.R. § 405.1835 parallels the right of review under section 1395oo(a), allowing a provider the right to a hearing, provided that: (1) an FI determination has been made with respect to the provider; (2) the provider files a written request with the PRRB within 180 days of the determination; and (3) the amount in controversy is at least $10,000. 42 C.F.R. § 405.1889 defines revised NPRs as "separate and distinct" from initial NPRs, and provides that section 405.1835 hearing rights apply to revised NPRs. *HCA Health Servs.*, 27 F.3d at 619; *University of Cincinnati*, 891 F. Supp. 1262, 1270 (S.D. Ohio 1995).

Because section 405.1889 expressly provides that a revision to a NPR is a "separate and distinct determination" from the initial NPR, the D.C. Circuit has joined a number of other Circuits in holding that the right to appeal a revised NPR attaches only to the scope of the revision. *HCA Health Servs.*, 27 F.3d at 622 (a revised NPR does not reopen the entire cost report to appeal, it merely reopens those matters adjusted by the revised NPR); *Anaheim Memorial Hospital v. Shalala*, 130 F.3d 845, 848 (9th Cir. 1997) (PRRB has jurisdictions only over those elements of the revised NPR that are reconsidered by the FI upon reopening); *University of Cincinnati*, 891 F. Supp. at 1271-1272 (the PRRB must determine whether the FI reopened the cost report to the extent that such reopening encompassed the particular subject matter upon which the provider's appeal is premised); *Albert Einstein Med. Ctr. v. Sullivan*, 830 F. Supp. 846, 849 (E.D.Pa. 1992), *aff'd*, 6 F.3d 778 (3d Cir. 1993) (a provider has a right to a hearing only for issues which were addressed in the revised NPR).

ORDER-10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Applying this line of reasoning to the present case, the Administrator concluded that the additional 2,244 Medicaid eligible days that plaintiff sought to include in its appeal of the revised NPR were "outside the 'issue specific' limitation on the scope of Board review of a revised NPR.'" (AR at 10.). The Administrator determined that the "matter at issue" in the revised NPR was the "days raised and addressed in the administrative resolution…." *Id.* (AR at 9.). Per that resolution, plaintiff submitted documentation for 230 days that it believed should have been included in its 1997 DSH calculation. The FI reviewed the documentation, accepted 24 days, rejected 206 days, adjusted the DSH calculation, and issued the revised NPR specifically incorporating the administrative resolution. (*Id.* at 9-10.). The additional 2,244 days were never presented to the FI for consideration. (*Id.* at 10.) The Administrator also noted that by signing the administrative resolution, plaintiff consented to the dismissal of its appeal before the Board.[6] Based on this, the Administrator concluded that the scope of the Board's review is limited to the FI's determination regarding the 230 days. *Id.*

In addition, the Administrator determined that plaintiff failed to demonstrate that it was "dissatisfied" with the FI's determination in the revised NPR, another prerequisite to Board jurisdiction under section 405.1835. (*Id.* at 10.). The Secretary interpreted the scope of the revised NPR to be limited by operation of the administrative resolution. Per the terms of the resolution, plaintiff submitted documentation for 230 Medicaid eligible days and the FI made a determination with respect to those days. Plaintiff did not object to the FI's treatment of the 230 days. Therefore, the Secretary concluded, a provider who "agreed to the related adjustments…cannot demonstrate that it was dissatisfied with the matters addressed on the revised NPR." (*Id.* at 10.).

---

[6]     Plaintiff does not dispute the Secretary's assertion that it never sought reinstatement of the appeal.

ORDER-11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

The court finds this interpretation reasonable. On its face, section 405.1889 does not address what effect a settlement agreement has on the scope of the PRRB's review of a revised NPR. The parties agree that the regulation is silent on this issue. (*See* Dkt. No. 20 at 15; Dkt. No. 17 at 7.). As there is no conflict between the Secretary's interpretation and the regulation's plain language, the interpretation is entitled to substantial deference. *Baptist Memorial Hospital v. Sebelius*, 768 F. Supp. 2d 295, 300 (D.D.C. 2011) citing *Thomas Jefferson Univ.*, 512 U.S. at 512. As previously noted, section 405.1889 characterizes revisions as "separate and distinct determinination[s]" for purposes of Board appeals. On the basis of this bifurcation, the D.C. Circuit has held that the Board's review of a reopened reimbursement decision is limited to the specific issues revisited on reopening. *Baptist*, 768 F. Supp. 2d at 300-301 citing *HCA Health Servs.*, 27 F.3d at 620 ("[W]e do not think it impermissible for the Secretary to interpret the 'intermediary determination' on reopening as limited to the particular matters revisited on the second go-around.").[7] Here, the FI expressly stated that it was revising the NPR "[t]o incorporate the administrative resolution…into the cost report." (AR at 119.). Pursuant to that agreement, plaintiff submitted documentation for 230 Medicaid eligible days, which the FI reviewed and incorporated into the revised cost report. Therefore, the court finds that is reasonable for the Secretary to conclude that the "specific issue revisited" in the revised NPR was the 230 days that the FI reconsidered.

The court is not persuaded by plaintiff's argument that its appeal "falls squarely within" the issue specific limitation set forth in *HCA Health Servs.* and the related cases. First, in advancing this argument, plaintiff misinterprets the Administrator's decision, arguing that the

---

[7]     The "issue-specific limitation" was also reflected in the PRRB's *Instructions* in effect during the relevant time period. *Instructions*, II.B.Ia.3 (p.3) ("The Board accepts jurisdiction over appeals from revised [NPRs] where the issue(s) in dispute were specifically adjusted by that NPR.").

ORDER-12

1

2

Secretary's interpretation of section 405.1889 requires that "an appeal from a revised NPR must be of an appeal of a different issue than the issue that was appealed, and settled from the original

3

NPR." (Dkt. No. 15 at 17, 20) (emphasis added). The Administrator's decision neither

4

announced nor applied such a rule. The Secretary's view is that, on appeal of a revised NPR, a

5

provider may challenge only the issue(s) addressed in the revised NPR; however, if the provider

6

has already settled that same issue(s), an appeal is unavailable.

7

8

Second, plaintiff's contention that its appeal addresses the very item that was

9

reconsidered and adjusted in the revised NPR—"the number of eligible but unpaid days under

10

the Medicaid Fraction of the DSH Adjustment"—is similarly misplaced. (*Id*. at 23.). Plaintiff use

11

of the term "issue" is far too broad. Furthermore, plaintiff fails to recognize that the Secretary is

12

interpreting the scope of the revised NPR in light of the administrative resolution. The Secretary

13

determined that the "matter at issue" in the revised NPR was the 230 days review by the FI per

14

the terms of the agreed upon resolution. *Id*. (AR at 9.). Section 405.1889 is silent as to the effect

15

of such a settlement agreement and the Secretary's interpretation of the regulation resolves this

16

issue sensibly. As such, this court may not disturb the Administrator's decision. *See Thomas*

17

*Jefferson Univ.*, 512 U.S. at 512 (the Secretary's interpretation of her own regulations must be

18

given controlling weight). Courts in this district have rejected similar arguments from providers.

19

*See St. Anthony's Health Center v. Leavitt*, 579 F. Supp. 2d 115, 120-121 (D.D.C. 2008)

20

21

(rejecting provider's argument that adjusting part of provider's cost limit in a revised NPR

22

opened up the entire cost limit issue to appeal); *Baptist Memorial Hospital*, 768 F. Supp. 2d at

23

301 ("[I]t was reasonable for the Secretary to apply [the] 'issue-specific' approach to require that

24

an exception request made pursuant to a revised NPR be limited to costs affected by the revised

25

NPR.").

ORDER-13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Furthermore, the court finds that plaintiff's interpretation of section 405.1889 makes little pragmatic sense. The posture of this case illustrates the problem with allowing a provider to "add" to an appeal. The 2,244 days that plaintiff seeks to include in the appeal have never been presented to or reviewed by the FI. Therefore, if the court were to accept plaintiff's position, the Board would be forced to make a determination on days that have not been reviewed by the FI. In addition, the regulations set a deadline of 180 days for a provider to appeal a cost report. 42 U.S.C. §1395oo(a). If the court were to accept plaintiff's interpretation of section 405.1889, a provider could skirt the 180 day limit by seeking additional reimbursement within 180 days of a revised NPR, long after the time to appeal the original NPR had expired. In other words, if the Board were to address the 2,244 additional days, yet another revised NPR would issue, and plaintiff could use the revised NPR's attendant appeal rights to introduce further days. This would create a never-ending cycle of appeals without a meaningful cut-off point.

Plaintiff's argument that the Secretary has a non-discretionary duty to include all Medicaid eligible days in its 1997 DSH Adjustment is similarly misplaced. Citing *Monmouth Medical Center v. Thompson*, 257 F.3d 807 (D.C. Cir. 2001) and *In Re Medicare Reimbursement Litigation*, 414 F.3d 7 (D.C. Cir. 2005), plaintiff argues that the Secretary has a clear duty to include all Medicaid eligible days in its DSH Adjustment, as provided by Health Care Financing Administration ("HCFA")[8] Rule 97-2. (Dkt. No. 15 at 4.).[9] Plaintiff mischaracterizes the holdings in these cases. *Monmouth* and *In Re Medicare* arose from the Secretary's issuance of HCFAR 97-2.  Prior to Rule 97-2, the HCFA interpreted the statutory formula set forth by

[8]     CMS was formerly known as HCFA.

[9]     Plaintiff argues that the Secretary "neither denies the accuracy of th[e] number of [2,244 additional days] or that this additional number would increase the DSH Adjustment for the Hospital's 1997 fiscal year…." (Dkt. No. 12 at 6.). The Secretary counters that she has not considered the days, so of course, she has not opined on the merits of plaintiff's claim for additional DSH reimbursement. (Dkt. No. 13 at 25.).

Congress to determine DSH Adjustments to include only those days for which hospitals actually received Medicaid payments. *See Baptist Memorial Hospital v. Sebelius*, 603 F.3d 57, 60 (D.C. Cir. 2010). However, in 1997 the HCFA issued Rule 97-2, which instructed FIs to include all Medicaid eligible days in DSH Adjustment calculations, regardless of whether the hospital actually received payment for those days. *Id.* citing HCFA Ruling 97-2. In *Monmouth*, the D.C. Circuit held that Rule 97-2 constituted notice under section 405.1885(b) that the Secretary's former method of calculating DSH adjustments was "inconsistent with applicable law." *Monmouth*, 257 F.3d at 814-815. Then, in *In re Medicare*, the Court clarified that because section 405.1885(b) speaks in mandatory terms, it imposes a nondiscretionary duty on the Secretary to reopen NPRs decided within the three years prior to the issuance of Ruling 97-2. *Id.* at 61. Therefore, under *Monmouth* and *In re Medicare*, it is section 405.1885(b), not Ruling 97-2 as plaintiff argues, that creates the obligation to act. *Baptist,* 603 F.3d at 62. Plaintiff is not proceeding under section 405.1885(b), and even if it were, the cost report at issue here issued after the regulation's three-year term expired.[10]

Finally, both parties discuss *Stormont-Vail Regional Med. Ctr. V. Sebelius*, a recent Tenth Circuit case. 708 F. Supp. 2d 1178 (D. Kan. 2010), *aff'd*, 2011 WL 2438652 (10th Cir. 2011). The court is perplexed why the parties spend so much time discussing this case, particularly in light of the fact that the issue for which the parties cite *Stormont-Vail*—what affect a partial administrative resolution has on a provider's right to add new issues to an appeal from an NPR—

---

[10]    Consistent with this line of reasoning, the court notes that several courts in this district have upheld the agency's denial of DSH reimbursement due to provider's failure to comply with the Secretary's regulations and other requirements. *See, e.g. Baptist Memorial Hospital v. Sebelius*, 566 F.3d 226, 229 (D.C. Cir. 2009) (affirming the PRRB's refusal to hear provider's appeal regarding DSH reimbursement when the provider failed to comply with the PRRB's instructions); *Baptist*, 603 F.3d at 57 (provider not entitled to mandamus relief to compel Secretary to reopen final reimbursement determination to include Medicaid eligible days in DSH Adjustment).

was not addressed by the district or Circuit courts. *Stormont-Vail*, 2011 WL at *2, *5 (noting that the provider conceded the issue in briefing).[11]

Based on the foregoing, this court finds that, under these circumstances, the Secretary's decision to limit the scope of appeal of the revised NPR to the 230 days reviewed by the FI is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. 5 U.S.C. § 706(2)(A),(E).[12]

---

[11]        In addition, plaintiff claims that the PRRB issued a "diametrically opposite" decision regarding jurisdiction concerning the provider's challenge to its 1995 FYE reimbursement. Therefore, plaintiff argues, the Secretary's action, by definition, is arbitrary and capricious. (Dkt. No. 15 at 23 fn. 11.). Plaintiff's argument is a *non sequitur*. The PRRB's decision was not the final decision of the Secretary. Instead, the Administrator reversed the Board's decision finding that the Board did not have jurisdiction over the appeal. Plaintiff also claims that the Secretary ultimately entered into a settlement agreement with the provider in *Stormont-Vail*, and by doing so "acted entirely inconsistently with its position in the instant case, and thus the Secretary herself has displayed arbitrary and capricious conduct." (*Id.* at 25.). This argument also fails to advance plaintiff's case. Parties settle cases for all sorts of reasons, and the court cannot and should not speculate as to the basis for the settlement. In any event, the settlement does not create a binding precedent. *See, e.g., Baptist Mem'l-Golden Triangle v. Sebelius*, 566 F.3d 226, 230 (D.C. Cir. 2009); *High Country Home Health, Inc. v. Thompson*, 359 F.3d 1307, 1314-15 (10th Cir. 2004) ("settlement agreements have no precedential weight, and the mere fact that the Secretary has settled other cases does not make it arbitrary and capricious for him not to settle this one").

[12]        Plaintiff argues that the administrative resolution was never intended "as a release of [its] claim for inclusion of all Medicaid eligible days in the DSH Adjustment." (Dkt. No. 15 at 10.). Rather, the resolution served as an "omnibus case management plan" for resolving the group appeal of which plaintiff was a part. (Dkt. No. 12 at 25.). In affirming the Board's decision to deny jurisdiction, the Administrator stated:

> The [p]rovider agreed to a full resolution of the cost year ending 1997 appeal pursuant to the [Full Administrative Resolution]. The plain language of the administrative resolution shows that it was intended to resolve for all time all disputes raised in the FY 1997 appeal for this [p]rovider. Accordingly, as a matter of law and in the interest of finality which settlement agreements are to provide, the [p]rovider may not now revisit the fiscal year 1997 cost year pursuant to the appeal of this revised NPR, which implemented the settlement agreed upon by the parties.

(AR at 11.). The Administrator presented this argument as an alternative basis for denying Board jurisdiction over the appeal. (AR at 10.). Because the court finds that the Administrator's decision to limit the scope of the revised NPR to the 230 days considered by the FI is a reasonable interpretation of section 405.1889, the court need not address whether the

IV.     **CONCLUSION**

The court hereby DENIES plaintiff's Motion for Summary Judgment and GRANTS the

Secretary's Cross Motion for Summary Judgment.

DATED this 14th day of May, 2012.

_____
Barbara Jacobs Rothstein
U.S. District Court Judge

---

administrative resolution unambiguously set forth the parties' intent "to resolve for all time all
disputes raised in the FY 1997 appeal for this [p]rovider." (AR at 11.).

ORDER-17